IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANDREW D. TUELL, | * | |
|       Plaintiff, | | |
| v. | * | CIVIL ACTION NO. RDB-14-1283 |
| COMMISSIONER OF CORRECTIONS | * | |
| WARDEN BOBBY SHEARIN | | |
|       Defendants. | * | |
| | *** | |

# **MEMORANDUM OPINION**

Pending is a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment filed by Defendants, Commissioner of Corrections[1] and Bobby Shearin, the former Warden of North Branch Correctional Institution ("NBCI"). ECF 14.[2] Plaintiff Tuell has responded and Defendant Shearin has replied. ECF 26, 36 & 41.[3] Upon review of papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, the dispositive motion, construed as a motion for summary judgment,[4] will be granted, and judgment will be entered in favor of Defendant Shearin.

**Background**

---

[1] Tuell previously sought and was granted the opportunity to withdraw his Complaint against the Commissioner of Corrections. ECF 25 & 29. Thus, Shearin is the only remaining defendant in this case.

[2] Also pending is Tuell's Motion to Strike (ECF 22) wherein he seeks to strike Defendants' defense of qualified immunity as "insufficient." The Motion will be denied, and instead will be considered as an additional opposition to Defendant's dispositive motion.

[3] Tuell's responses include a surreply. ECF 41.

[4] Defendant argues that Tuell failed to exhaust administrative remedies and that his allegations fail to raise a constitutionally cognizable claim. Both arguments if proven give rise to dismissal; as presented here, however, Shearin's reliance on materials outside the pleadings converts the dispositive pleadings as a motion for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998) ("When matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.") (alteration in original) (quoting Fed. R. Civ. P. 12(b)) (internal quotation marks omitted).

In order to save energy costs during cold weather, the windows at NBCI are bolted shut from the outside. Tuell complains that during February and March of 2013, he was unable to open his cell window to bring in fresh air and neutralize the effect when a chemical agent was used in his housing tier. ECF 1, p. 2. Tuell states that the ventilation system at NBCI moves air from one cell to another and does not pull any clean air into the cell. *Id*. Tuell, who suffers from asthma, was forced to use his albuterol inhaler and cold water to minimize the effects of the chemical agent. *Id*., p. 2.

Tuell also complains that sealing the windows creates additional health risks because inmates are forced to eat, wash, and defecate in the same unventilated area. *Id*., p. 3 He further states that because of the manner in which the thermostat is controlled, the cells become extremely hot. *Id*. Tuell names Warden Shearin as a defendant because Shearin "gave the order" to bolt the windows. *Id*. He indicates that he filed an administrative remedy request ("ARP") regarding these problems and was advised to contact medical personnel regarding any health concerns.

Defendant Shearin has responded. During the relevant period, Tuell was housed on Block 1, Tier B, on disciplinary segregation. ECF 14-2, pp. 3.[5] Records reflect that pepper spray was used in Tuell's housing unit at the times about which he complains. ECF 14-2, pp. 4-7.

Acting Correctional Maintenance Manager, Major Edward Twigg avers that he inspected the maintenance records made and maintained by the Department of Public Safety and Correctional Services ("DPSCS") and found no instance of complaints regarding air ventilation occurring in Tuell's housing unit on any of the dates about which Tuell complains. ECF 14-3; 14-4. Twigg avers that each of NBCI's housing units is equipped with a ventilation system that brings in outside air, and each cell has an exhaust vent. ECF 14-3. DPSCS contracts with an

---

[5] Citations are to the Court's electronic docket.

independent contractor to test the air flow within each of its facilities every three years. The previous test demonstrated that NBCI meets the standards of the American Correctional Association ("ACA") ventilation guidelines. ECF 14-3; 14-5. Additionally, DPSCS has a preventative maintenance protocol that requires additional testing every four months to ensure the ventilation systems continue to function properly. ECF 14-3.

Tuell's medical records demonstrate that he has experienced symptoms of asthma since 1999. ECF 14-6, p. 14. During a chronic care visit on February 14, 2013, Tuell's asthma was described as mild, intermittent and exercise induced. Aggravating factors included changes in weather, exercise, and pollen, and Tuell's symptoms were relieved with a beta-agonist inhaler. Symptoms included a dry cough, nocturnal asthma and awakenings with wheezing, and palpitations. *Id*. Tuell was examined on February 26, 2013, by Dr. Colin Ottey for follow-up regarding urinary dysfunction. *Id*., pp. 17-18. No note was made during this visit regarding asthma complaints.

Tuell submitted a sick call slip, received on March 8, 2013, claiming he suffered an asthma attack brought on by the use of pepper spray in his housing unit. *Id*., p. 22. He was treated for asthma symptoms, as well as right ear bleeding, a rash to chest, and dry skin. *Id*., pp. 23-24. The nurse noted equal and unlabored respiration and no use of accessory muscles or audible wheezing. Tuell was encouraged to use asthma inhalers as ordered and to report difficulty breathing immediately to officers on his tier. *Id*., p. 23. The nurse's assessment was "Anxiety r/t perceived medical diagnosis." *Id*. On March 17, 2013, Tuell was seen again for ear discomfort. *Id.,* pp. 25-26.

On March 21, 2013, Tuell voiced concerns regarding indirect exposure to the use of pepper spray on the tier exacerbating his asthma condition by telling a nurse his asthma flared

roughly twice a week when pepper spray use occurred on the tier. *Id.*, p. 30. He also stated that the tier had poor ventilation. *Id.* Tuell was advised to increase his fluid intake, discuss his concerns with the healthcare provider at his next chronic care follow-up, continue his medication, and place a sick-call request if symptoms did not subside.[6] *Id.*, p. 32.

On March 25, 2013, Physician Assistant Greg Flury treated Tuell for a urinary problem and concerns regarding his asthma. *Id.*, pp. 34-35. Flury noted "The Patient has chronic [history] asthma, states sx [sic] flares when exposed to pepper spray on tiers. Pati[ient] was educated that medical dept is unable to control the facilities.…" *Id.*, p. 34. Physical examination of Tuell's nose, mouth and throat revealed no nasal deformity or mucosal lesions, and the tongue and throat appeared normal. *Id.* Tuell's lungs were clear to auscultation and percussion. *Id.*

A memorandum from former Chief of Security Frank B. Bishop, Jr., dated April 1, 2009, outlines the policy regarding exterior cell windows, which are to be closed on or about November 1 and reopened on or about April 1. The policy exists to limit cost and energy waste during the colder months. ECF 14-2, p. 7. The memorandum indicates that if an inmate believes he has a medical issue he could submit a sick call request in order to be evaluated. *Id.*

Plaintiff has not sought a medical order that he be permitted to open his exterior cell window due to a medical condition. ECF 14-6.

## Standard of Review

A.   Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted

---

[6] Tuell notes that medical staff advised that they were unable to control institutional decisions. ECF 41, p. 4. He offers no evidence that as a matter of medical necessity his cell window should have been opened. *Id.*

does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 563. The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986).

B.      Motion for Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in his favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court

must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact.  No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

**Analysis**

A.  Exhaustion of Claims

Shearin has raised an affirmative defense, arguing that Tuell failed to exhaust his administrative remedies prior to filing suit.[7] The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e.

The Supreme Court has interpreted the language of this provision broadly; holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Tuell's allegations, and his Complaint must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that Shearin has forfeited the right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner must appeal to the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). *See* Md. Code Ann. Corr. Serv. §§ 10-206, 10-210; Md. Regs. Code title 12 § 07.01.03.

---

[7] *See Jones v. Bock*, 549 U.S. 199, 216–17 (2007) (failure to exhaust is an affirmative defense and inmates are not required to demonstrate exhaustion in their complaints).

Administrative remedies must, however, be available to the prisoner and this Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008); *see also Blake v. Ross*, 787 F.3d 693, 700-01 (4th Cir. 2015).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.[8] *Chase v. Peay*, 286 F. Supp. 2d 523, 530 (D. Md. 2003); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F. 3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the

---

[8] Three purposes underlie the PLRA's exhaustion requirement: "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

exhaustion requirement, but need not seek judicial review). Exhausting administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies, *see Neal v. Goord*, 267 F. 3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds), as it is a precondition to filing suit in federal court. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999).

Applying the PLRA exhaustion requirements here, Tuell's claims must be dismissed if he failed to exhaust available remedies prior to bringing this suit. Tuell filed two ARPs regarding his concerns that his health was affected by pepper spray deployed on the tier while the windows were bolted shut and the tier lacked fresh air and proper ventilation. *See* NBCI 2888-12 and NBCI-0590-13, ECF 14-7. Both grievances were dismissed as without merit. *Id.* Tuell appealed the dismissal of ARP NBCI 0590-139 on July 24, 2013, but the IGO dismissed the appeal on November 1, 2013, after Tuell failed to provide copies of the required ARP paperwork.[10] ECF 14-8, p. 4. Tuell filed no ARP regarding the temperature in his cell. ECF 14-7.

Tuell claims that he exhausted all available administrative remedies because his effort to appeal to the Commissioner was never acknowledged.[11] ECF 26-1, p. 6; ECF 41, p. 5. Tuell also avers that the issues raised in his ARPs regarding the windows and ventilation system were not addressed on the merits through the ARP process and the IGO has not provided the Court his original grievance so that it could be determined what he appealed. He further notes that he

---

[9] There appears to be a typographical error in the reference to the ARP as it is referred to as NBIC-0593-13. *See* ECF14-8, p. 3.

[10] This requirement is set out in COMAR 12.07.01.04(B)(9)(a).

[11] Tuell notes that he filed ARP NBCI 1084-13, complaining of the inability for a grievant to show proof of appealing an ARP dismissal to the Commissioner where no receipt is provided. ECF 26-1, p. 3. This appeal concerning the ARP process was submitted to the IGO on June 21, 2013, and dismissed on August 7, 2013 as frivolous. Tuell was advised to use certified mail as a means to verify delivery and receipt of ARP appeals. ECF 14-8, p. 3; ECF 36, Ex. 2.

received no response from the Commissioner.  ECF 26-2.

These deficiencies on the part of prison administrators, even if true, are not material to the determination of whether Tuell exhausted his administrative remedies.  In his declaration, IGO Executive Director Scott Oakley states that Tuell filed an appeal from the disposition of an ARP complaint regarding the locked windows on the tier. ECF 14-8.  As previously noted, the grievance was administratively dismissed after Tuell failed to provide the related ARP paperwork as directed.  Tuell offers no explanation for his failure to respond to the IGO's request; indeed, it appears that Tuell simply ignored the request.[12]

Tuell failed to exhaust available administrative remedies as to all the claims presented in his Complaint.  The Complaint is therefore subject to dismissal.

B.    Failure to State Claims

Had Tuell properly exhausted his administrative remedies, his claims nevertheless would fail.  While conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment, *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981), conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society."  *Id*.  In order to establish the imposition of cruel and unusual punishment, an inmate must prove two elements - that "the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted).  "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, such punishment cannot be called "'cruel

---

[12] Tuell states that the lack of response from the Commissioner was the problem he sought to present to the IGO; therefore, there was no paperwork to attach.  Tuell fails to address why he did not present this conundrum to the IGO and/or why he failed to provide the original grievance paperwork.  See ECF 41, p. 5.

and unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008), citing *Wilson v. Seiter*, 501 U.S. 294, 298-300 (1991).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U. S. at 298. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. North Carolina Dept. of Corrections,* 612 F.3d 720, 723 (4th Cir. 2010), quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002). Conduct is not actionable under the Eighth Amendment unless it transgresses bright lines of clearly-established pre-existing law. *See Maciariello v. Sumner*, 973 F. 2d 295, 298 (4th Cir. 1992).

The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of a serious or significant physical or emotional injury resulting from the challenged conditions. *See Odom v. South Carolina Dept. of Corrections*, 349 F. 3d 765, 770 (4th Cir. 2003).

Defendant's actions are not actionable unless "in light of preexisting law the unlawfulness of those actions is apparent." *Iko*, 535 F. 3d at 238, citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "We do not require of such officials the legal knowledge culled by

11

the collective hindsight of skilled lawyers and learned judges, but instead only the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct." *Johnson v. Caudill*, 475 F. 3d 645, 650 (4th Cir. 2007).

Applying these standards here, this Court finds that the conditions described by Tuell were not so severe that Shearin could be charged with "fair warning that [his] conduct was unconstitutional." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F. 3d 2929, 313 (4th Cir. 2006). The discomfort Tuell experienced while housed at NBCI was restrictive and harsh, but did not impose cruel and unusual punishment. This conclusion is supported by the absence of proof of significant, serious physical or psychological injury resulting from the conditions described. It is not the province of this Court to determine how a particular prison might be more beneficently operated; the expertise of prison officials must be given its due deference. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995). Shearin is entitled to summary judgment on this claim.

## Conclusion

Defendant Shearin's dispositive motion will be granted. A separate Order follows.


Date: August 19, 2015                         /s/
                                    RICHARD D. BENNETT
                                    UNITED STATES DISTRICT JUDGE